FILED
COURT OF APPEALS
DIVISION II

2014 AUG 12 PM 12: 44

STATE OF WASHINGTON

BY

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43432-6-II |
| Respondent, | (Consolidated with No. 43519-5-II) |
| v. | |
| JUAN CARLOS PARRA-INTERIAN, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — A jury found Juan Carlos Parra-Interian guilty of second degree rape, first degree burglary with sexual motivation, solicitation to commit first degree murder, and conspiracy to commit first degree murder. Parra-Interian appeals all of his convictions, arguing that the trial court erred by denying his motion to sever the charges. He also challenges his rape conviction, arguing that insufficient evidence supports the jury's verdict. Because Parra-Interian failed to meet his burden to demonstrate that a joint trial on all the charges was manifestly prejudicial, the trial court did not abuse its discretion by refusing to sever the charges. Furthermore, sufficient evidence supports the jury's verdict on the rape charge. Accordingly, we affirm.

FACTS

In June 2010, SA[1] and her fiancé, Christopher McGowan, had a small party. After the party, SA and McGowan went to bed, had sexual intercourse, and went to sleep. Later in the night, SA partially woke up because she felt someone touching her inner thighs and vagina. At first, SA was not alarmed because she believed that McGowan was touching her. However, when the man attempted penile penetration and tore off her birth control patch, she knew it was not McGowan and she became alarmed.

SA attempted to wake McGowan as the man left the room. Originally, SA believed that McGowan's brother had assaulted her because she thought McGowan's brother was the only other adult male in the house at the time. When McGowan left the room, he was surprised to discover that Parra-Interian was also in the house. SA suggested that McGowan smell their hands to determine which man assaulted her. McGowan smelled his brother's hands and did not smell anything unusual. While this was happening, Parra-Interian left the house. McGowan confronted him in the driveway, but Parra-Interian would not let McGowan smell his hands. Parra-Interian got in his car and left.

After police located Parra-Interian, he was brought to Kelso Police Department and place in an interview room. After Parra-Interian left the interview room, detectives found a birth control patch on the floor of the interview room. Forensic testing confirmed that both SA's and Parra-Interian's deoxyribonucleic acid (DNA) was on the birth control patch. Testing also showed that McGowan's DNA profile from a "sperm fraction" was on Parra-Interian's fingers. 3B Report of Proceedings (RP) at 578.

---

[1] We refer to the victim by her initials to protect her privacy.

The State charged Parra-Interian with second degree rape and first degree burglary with sexual motivation. Parra-Interian was incarcerated in Cowlitz County Jail pending trial. While in jail, Parra-Interian approached another inmate, Ronald White, and asked him to kill SA. White reported his conversations with Parra-Interian to the jail staff. White agreed to wear a wire, and did so on two different occasions. White first wore a wire in jail during a discussion with Parra-Interian about planning SA's murder. White next wore a wire during a meeting with Parra-Interian's wife where they confirmed the plan and White was given pictures of SA. Both conversations were recorded.

The State then charged Parra-Interian with solicitation to commit first degree murder and conspiracy to commit first degree murder. The State moved to join all charges for trial. Parra-Interian objected to a joint trial. The trial court joined the charges for trial, finding that the charges were a series of acts that were connected together and that evidence would be cross admissible, although the evidence introduced in separate trials may be more limited.

At trial, SA testified regarding the facts as related above. When asked to describe her consciousness level at the time of the assault, SA testified that on a scale of one to ten, with one being "completely asleep" and ten being "all the way awake," she was "a four" when she first felt someone running fingers up her legs and touching inside her vagina. 2A RP at 240.

White also testified at trial. White testified about the conversations that took place during the undercover operations, as well as conversations he had with Parra-Interian that were not recorded. During his testimony, White made the following two statements:

[WHITE]: I said, "What if [SA's] child's there?" "Do it."
. . . .
[WHITE]: Again, I said, "What if there -- what if her child's there?" "That too."

4B RP at 850-51.

3

After White's testimony, Parra-Interian renewed his motion to sever the charges and requested a mistrial on the rape and burglary charges. His attorney stated that after watching the jury during White's testimony, "you could see smoke coming out of [the jurors'] ears" and that the jurors were "visibly angered and visibly upset." 4B RP at 878. He argued that the jury is "quite clearly prepared to convict him of everything they can possibly convict him on." 4B RP at 878. The trial court denied Parra-Interian's motion, ruling that

> there was no objection at the particular time. Jurors are presumed to follow instructions, and I've seen more than once when jurors have expressed significant emotion during parts of trials, and that have come back and have followed instructions, and actually have -- that returned verdicts that seemed contrary to their -- to their emotions. So, I -- I think jurors are scrupulous. That's been my experience, they're very scrupulous in their duties. They take seriously the fact that they're to -- to look at each charge individually, and each element individually, and each element has to be proved beyond a reasonable doubt. The fact that there may be a strong emotion in hearing testimony on one day, we are planning on going until Monday with testimony, and then closing arguments would be at that time. So, I think any -- I think emotions fade over time. Certainly they're going to remember testimony. So -- so I think, all that being said, I'll -- I'll deny the motion for severance and deny the motion for mistrial.

4B RP at 887-88.

The jury found Parra-Interian guilty of all charges. Parra-Interian appeals.

## ANALYSIS

Parra-Interian challenges his convictions, arguing that the trial court abused its discretion by denying his motion to sever the charges. He argues that the trial court abused its discretion because the charges were improperly joined as a matter of law. He also argues that joining the charges for trial was prejudicial. However, joining the charges was legally permissible under CrR 4.3 and CrR 4.3.1, and Parra-Interian has not shown that a joint trial was so manifestly prejudicial that he did not receive a fair trial. Parra-Interian also argues that there was insufficient evidence to support the jury's verdict on the second degree rape charge because the

4

State failed to prove that SA was physically helpless at the time of the sexual intercourse. But the State presented evidence that would allow a reasonable jury to find that SA was asleep for at least part of the sexual intercourse; therefore, sufficient evidence supports the jury's verdict finding Parra-Interian guilty of second degree rape. Accordingly, we affirm Parra-Interian's convictions.

## A.    JOINDER/SEVERANCE

We review a trial court's decision denying a CrR 4.4(b) motion to sever charges for a manifest abuse of discretion. *State v. Eastabrook*, 58 Wn. App. 805, 811, 795 P.2d 151, *review denied*, 115 Wn.2d 1031 (1990). Charges may be joined if they are "based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan." CrR 4.3(a)(2). However, even offenses properly joined under CrR 4.3 may be severed under CrR 4.4 whenever the trial court "determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b); *State v. Bythrow*, 114 Wn.2d 713, 717, 790 P.2d 154 (1990). A defendant seeking severance of properly joined charges bears the burden of demonstrating that "a trial involving [all] counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *Bythrow*, 114 Wn.2d at 718.

A defendant is prejudiced by joined offenses if (1) the defendant has to present possibly conflicting defenses for the offenses; (2) the jury may infer guilt on one charge from evidence presented on another charge; or (3) the cumulative evidence may lead to a guilty verdict on all charges when, if considered separately, the evidence would not support every charge. *Bythrow*, 114 Wn.2d at 718. In determining whether the potential for prejudice requires severance, a trial court must consider (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) the court's instructions to the jury to consider each count

5

separately, and (4) the cross admissibility of evidence for the other charges even if they were tried separately. *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994), *cert. denied*, 514 U.S. 1129 (1995). "[A]ny residual prejudice must be weighed against the need for judicial economy." *Russell*, 125 Wn.2d at 63.

Here, the trial court properly joined the charges for trial. Parra-Interian's acts were clearly connected because solicitation and conspiracy to commit murder were meant to prevent SA, the victim of his rape charges, from testifying. Therefore, the trial court did not abuse its discretion by joining these charges with the rape and burglary charges for trial. Accordingly, the relevant question is whether Parra-Interian has met his burden to show that the trial court manifestly abused its discretion by not severing the charges because the joint trial was so manifestly prejudicial it outweighed the benefits of a joint trial.

Parra-Interian fails to meet his burden to show manifest prejudice according to the *Russell* factors. First, although Parra-Interian alleges that the State's evidence was significantly stronger on the solicitation and conspiracy charges, he is incorrect. Second, even in a joint trial, Parra-Interian's defenses to each count were clear. Third, the trial court correctly instructed the jury to consider each count separately. Fourth, the evidence on each count would have been cross admissible. Given these factors, any potential prejudice arising from a joint trial does not outweigh the need for judicial economy in this case. *Russell*, 125 Wn.2d at 63.

Regarding the strength of the State's evidence on each count, Parra-Interian's argument that the State's evidence was weaker on the rape case relies on the mistaken assumption that a case based on circumstantial evidence is weaker than a case based on direct evidence. It is well-established that circumstantial and direct evidence are considered equal. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Here, the State had strong circumstantial evidence

6

supporting the rape and burglary charges: Parra-Interian had no reason to be in the house because the party was over and everyone was asleep at the time he entered the house; he was the only person awake at the time of the rape; he refused to allow McGowan to smell his hands; SA's birth control patch with his and SA's DNA was found in the interrogation room he had been in; and he had McGowan's sperm on his fingers. Similarly, the State had strong direct evidence against Parra-Interian for the conspiracy and solicitation charges: White's testimony and the wiretap recordings. Under the law, the strength of the State's strong circumstantial evidence on the rape charge is equivalent to the strength of the State's direct evidence on the solicitation and conspiracy charges. Accordingly, there was not a disparity in the strength of the State's evidence that demonstrates a joint trial resulted in manifest prejudice.

Regarding the clarity of defenses on each count, Parra-Interian's defenses were clear. Parra-Interian essentially presented general denials on all counts.[2] Thus, there was little to no risk that the jury would have been confused by his general denial defense on all counts.

Regarding the jury instructions, there is no dispute that the trial court properly instructed the jury to consider the evidence on each count separately. We presume that juries follow the trial court's instructions. *Russell*, 125 Wn.2d at 84. Therefore, because we presume that the jurors considered the evidence on each count separately, the court's instruction to the jury reduced any potential prejudice from a joint trial.

Finally, the evidence on the charges was cross admissible. Parra-Interian concedes that some evidence of each charge would have been admissible in a trial on the other charge; however, he argues that because the full extent of the evidence may not have been admissible in

---

[2] Parra-Interian argues that he denied the rape, admitted to witness tampering, and denied having the intent to commit murder. His argument might have some merit if the State had charged lesser-included offenses on the solicitation and conspiracy charges, but the State did not.

the other trial, a joint trial was manifestly prejudicial. Parra-Interian specifically argues that the trial court erred by refusing to sever the charges because the jury's reaction to White's testimony, in and of itself, resulted in a manifest prejudice that required the trial court to grant his motion for a mistrial and sever the charges. We disagree.

As we noted above, the State had a very strong circumstantial case on the rape. Further, the State did not even mention White's testimony regarding killing the child during its closing argument. Outside of Parra-Interian's assertions during his argument on the motion for a mistrial and to sever, there is nothing in the record to support Parra-Interian's contention that the sole reason the jury convicted Parra-Interian for the rape and burglary was because of White's testimony regarding killing the child.

And Parra-Interian did not object to the testimony at the time that it was given, nor did he request that the trial court instruct the jury to disregard the testimony. We recognize that declining an instruction to disregard prejudicial testimony is a legitimate trial tactic meant to avoid drawing additional attention to prejudicial evidence. *In re Pers. Restraint of Davis*, 152 · Wn.2d 647, 714, 101 P.3d 1 (2004). Because Parra-Interian declined to draw additional attention to the prejudicial testimony, and the testimony was not mentioned again, the prejudicial nature of the testimony was mitigated. Moreover, the jury was specifically instructed to decide the case based on the facts and that they "must not let [their] emotions overcome [their] rational thought process." 7B RP at 1309. Again, we must presume that the jury followed this instruction and did not decide the case based on their initial emotional reaction to White's testimony. Accordingly, Parra-Interian has failed to demonstrate manifest prejudice resulting from White's testimony regarding Parra-Interian's instructions to kill SA's child.

Overall, while Parra-Interian may have suffered some prejudice from a joint trial, the rules do not prohibit a joint trial simply because the defendant suffers some prejudice. The law requires that the defendant demonstrate a manifest prejudice that denied him a fair trial. Here, in light of the *Russell* factors, Parra-Interian has failed to meet his burden to prove that a joint trial was so prejudicial that it outweighed the benefits of judicial economy in this case. Accordingly, Parra-Interian has failed to show that the trial court abused its discretion by refusing to sever the properly joined charges.

B.    SUFFICIENCY OF THE EVIDENCE

Parra-Interian also argues that there was insufficient evidence to support the jury's verdict on the rape charge because the State failed to prove that SA was physically helpless. "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Salinas*, 119 Wn.2d at 201. All "reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Circumstantial and direct evidence are deemed equally reliable. *Delmarter*, 94 Wn.2d at 638. "Credibility determinations are for the trier of fact and cannot be reviewed on appeal." *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

To convict Parra-Interian of second degree rape, the State had to prove that (1) Parra-Interian engaged in sexual intercourse and (2) the victim was "incapable of consent by reason of being physically helpless or mentally incapacitated." RCW 9A.44.050(1)(b). Sexual intercourse occurs upon any penetration, however slight, and includes penetration by an object. RCW

9

9A.44.010(1)(a)-(b). Physically helpless means "a person who is unconscious or for any other reason is physically unable to communicate unwillingness to an act." RCW 9A.44.010(5). It is established that a person who is asleep is physically helpless. *State v. Puapuaga*, 54 Wn. App. 857, 861, 776 P.2d 170 (1989).

Here, SA's testimony on direct examination supports the reasonable inference that because she was partially woken up by Parra-Interian digitally penetrating her, Parra-Interian had digitally penetrated her while she was sleeping. Taking the evidence in the light most favorable to the State, sufficient evidence supports the rape conviction. Parra-Interian argues that SA's testimony on cross-examination implied that Parra-Interian did not penetrate her until after she was partially awake. However, it is the jury's responsibility to resolve conflicting testimony. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004). Accordingly, Parra-Interian's sufficiency of the evidence claim fails.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

                                                                       LEE, J.

We concur:

HUNT, J.

BJORGEN, A.C.J.

10